UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                  :
MUHAMMAD SHAFIQUE,                :
                                  :
          Petitioner,             :    Civ. No. 16-3878 (NLH)
                                  :
     v.                           :    OPINION
                                  :
UNITED STATES OF AMERICA,         :
                                  :
          Respondent.             :
_____:

APPEARANCES:
Edward C. Bertucio, Jr., Esq.
Hobbie, Corrigan & Bertucio, P.C.
125 Wyckoff Road
Eatontown, NJ 07724
     Counsel for Petitioner

Diana V. Carrig, Esq.
Office of the United States Attorney
401 Market Street
Camden, NJ 08101
     Counsel for Respondent


HILLMAN, District Judge

     Presently before the Court is the Motion to Vacate, Set

Aside, or Correct Sentence of Muhammad Shafique ("Petitioner")

brought pursuant to 28 U.S.C. § 2255 (the "Petition").  ECF No.

1.  In response to this Court's Order to Answer, ECF No. 3,

Respondent the United States of America filed its Answer, ECF

No. 7, and Petitioner filed a Reply, ECF No. 8.  For the

following reasons, the Court will deny the Petition and decline

to issue a certificate of appealability.

I.   BACKGROUND

A.   Criminal Proceedings

Petitioner, along with his co-defendants, was arrested on February 14, 2012, pursuant to a federal criminal complaint, arising from an investigation into a conspiracy to procure contraband cigarettes in violation of 18 U.S.C. § 2342(a).   No. 12-cr-636, ECF Nos. 1 (complaint); 13 (executed arrest warrant).[1] The Court appointed Jose Luis Ongay, Esquire, to represent Petitioner before his initial appearance.   No. 12-cr-636, ECF No. 6.

Mr. Ongay reviewed the Complaint with Petitioner, and Petitioner admitted that he had engaged in the transactions described in the complaint and told Mr. Ongay that he wanted to plead guilty.   See No. 16-cv-3878, ECF No. 7-4, Declaration of Jose Luis Ongay at 2.   The Government sent discovery materials including the recordings of the controlled sales of cigarettes, over one hundred law enforcement reports detailing the sales and investigative measures throughout the investigation, financial records, and the materials obtained during the various searches to one of the attorneys of a co-defendant, who then arranged for a discovery vendor to make the materials available to all

---

[1] The criminal complaint and initial proceedings were originally filed under No. 12-mj-2068 and later merged into No. 12-cr-636 after an indictment was returned.

counsel electronically.  ECF No. 7, Ans. at 5.  Petitioner, via counsel, filed a motion to obtain access to the electronic discovery database, which was eventually granted.  See No. 12-cr-636, ECF No. 17.

On September 25, 2012, the Government indicted Petitioner and his co-defendants on charges related to the criminal complaint.  No. 12-cr-636, ECF No. 29.  The Government later filed a superseding indictment on October 10, 2012.  ECF No. 31. One of the co-defendants filed a motion to dismiss the indictment based on outrageous Government conduct on February 4, 2013.  No. 12-cr-636, ECF No. 59.  Petitioner, along with other co-defendants, joined in the motion.  No. 12-cr-636, ECF No. 70. The motions to dismiss were denied.  No. 12-cr-636, ECF No. 73.

Petitioner agreed to plead guilty, but before doing so, he attempted to cooperate with the U.S. Attorney's Office by proffering on December 6, 2012.  No. 16-cv-3878, ECF No. 7-5. Mr. Ongay was present with Petitioner at the proffer.  Id. Petitioner admitted to his conduct and provided detailed information regarding the conspiracy and other ongoing investigations.  Id.

After proffering, Petitioner agreed to consolidate his cases and plead guilty to four separate federal criminal offenses:  Counts 1 and 13 of the superseding indictment in No. 12-cr-636 for conspiracy to engage in cigarette tracking and

conspiracy to engage in money laundering; (2) conspiracy to commit bank and wire fraud, offenses charged in an indictment from the Southern District of New York, No. 13-cr-536;[2] and (3) another conspiracy to engage in cigarette tracking. No. 13-cr-547, ECF Nos. 1 (information), 5 (plea agreement).

In addition to laying out the charges, the plea agreement laid out the maximum sentences for each charge, which would total fifty (50) years imprisonment. No. 13-cr-547, ECF No. 5 at 2. The plea agreement did not include an agreed upon term of imprisonment, but it did contain an appellate waiver so long as the sentence imposed fell within or below the U.S. Sentencing Guidelines range for an offense level of 26. Id. at 4, 11. The plea agreement also provided that the Court could impose a term of supervised release not to exceed three (3) years for the New Jersey offenses and not to exceed five (5) years for the New York offenses. Id. at 3.

Petitioner pled guilty on August 15, 2013. See No. 13-cr-547, ECF No. 3 (minute entry); No. 16-cv-3878, ECF No. 1-5 at 4-78 (plea hearing transcript). This Court conducted a lengthy and thorough plea colloquy. No. 16-cv-3878, ECF No. 1-5. Under oath, Petitioner agreed that he had reviewed with Mr. Ongay and

---

[2] The Southern District of New York indictment was transferred to this district on August 12, 2013. See No. 13-cr-536, ECF No. 1 (consent to transfer jurisdiction).

understood the plea agreement, the charges contained in the various charging documents, and the rights and penalties defined in the Rule 11 form.  <u>Id.</u>  He also confirmed that he was satisfied with his counsel's representation and advice.  <u>Id.</u> The Court asked Mr. Ongay whether he had received "sufficient discovery and other information to advise your client properly about this plea of guilty."  <u>Id.</u>  Mr. Ongay replied, "Yes, Your Honor.  This is the case that we have a computerized database that has all of the information . . .  It is quite good, if I may say."  <u>Id.</u>  Mr. Ongay also explained that he did not counsel Petitioner regarding the mortgage fraud conspiracy case in New York, but rather relied upon Petitioner's New York counsel to do so.  <u>Id.</u>

At the plea hearing, Petitioner and Ongay signed and submitted a written Application for Permission to Enter Plea of Guilty.  No. 13-cr-547, ECF No. 4.  In the Application, Petitioner stated, inter alia, that he told his lawyer all the facts and circumstances known to him about the charges set forth in the indictments and information, that he was satisfied that his lawyer understood the information that he provided, and that his lawyer counseled and advised him on the nature of each charge and on all possible defenses he might have in this case. <u>Id.</u>, ¶¶ 15-16.  He also stated that his lawyer explained the plea agreement to him and that he understood it.  <u>Id.</u>, ¶ 37.

Finally, Petitioner stated, "I believe that my lawyer has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP MY LAWYER HAS GIVEN ME." Id., ¶ 42. Mr. Ongay stated that he had reviewed the Application with Petitioner. No. 16-cv-3878, ECF No. 1-5. Then Petitioner signed the Application in open court. Id. at 65-68; No. 13-cr-547, ECF No. 4.

The Court concluded that Petitioner's plea was knowing, voluntary, and supported by an independent basis in fact. No. 16-cv-3878, ECF No. 1-5. The Court accepted Petitioner's plea of guilty. Id. See also No. 13-cr-347, ECF No. 3 (minute entry).

On August 6, 2014, the parties appeared before the Court for sentencing.[3] No. 12-cr-636, ECF No. 12 (minute entry); No. 16-cv-3878, ECF No. 1-3 at 2-67 (sentencing transcript). The plea agreement stipulated an advisory offense level, after all adjustments, of a level 26. However, this Court, sua sponte, determined that a particular specific offense characteristic in U.S.S.G. § 2S1.1 did not apply despite the stipulation and lowered the total offense level 25 and revised the PSR accordingly. The revision resulted in an advisory Guidelines

---

[3] All of Petitioner's co-defendants were sentenced before him. See No. 12-cr-636, ECF Nos. 97, 116, 123, 126, 129.

range of 57 to 71 months' imprisonment.  No. 16-cv-3878, ECF No. 1-3.

The Government argued that a sentence within the Guidelines range was appropriate and that there was no support for a downward variance because: (1) Petitioner was the orchestrator and primary beneficiary of the 2011 to 2012 cigarette trafficking conspiracy; (2) Petitioner committed four separate federal criminal offenses – two of which (the money laundering and the 2010 cigarette trafficking conspiracy) resulted in no incremental punishment; and (3) Petitioner continued to engage in illegal trafficking of cigarettes, even after he had been arrested in New York in possession of approximately 4,000 cases of contraband cigarettes in January 2012 and after he had been arrested in the present case while on bail.  <u>See</u> ECF 7, Ans. at 10 & ECF No. 7-6 (Government's sentencing memorandum).

Mr. Ongay argued for a downward variance based upon sentencing entrapment/manipulation, i.e. that the Government continued to sell contraband cigarettes to Petitioner over a period of months thereby increasing his offense level.  No. 16-cv-3878, ECF No. 1-3.  Petitioner also had his wife address the Court, who requested that the Court consider something akin to "probation."  <u>Id.</u>  Mr. Ongay specifically noted that Petitioner's behavior while on bail and under the supervision of the Court had been exemplary, and that any term of incarceration

would negatively impact his family especially because he was the main provider for the family.  Id.

The Court declined to vary downward, but found that Petitioner merited a sentence of 57 months - at the lowest end of the Guidelines range.  Id.  In rejecting the defense's sentencing entrapment argument in support of a variance, which the Court had accepted at the sentencings of Petitioner's co-defendants, the Court distinguished Petitioner's case given his "willingness . . . to participate and himself drive many of these transactions" and noted his willingness to engage in trafficking before and after the Government's involvement.  Id. at 50-54.  The Court explained that "anything lower than 57 months would fail to address the fact that [Petitioner] was engaged in a significant wire fraud involving losses to lenders . . . .  That criminal conduct standing alone would have warranted a sentence close to the 57 number I articulated, perhaps 41 months, the additional months designed to encompass this broad conspiracy to sell contraband cigarettes and to address Mr. Shafique's history."  Id. at 53-54.

Finally, the Court pointed out that Petitioner's commission of four separate federal offenses required a substantial sentence to deter future conduct: "a strong message needs to be sent to Mr. Shafique that these multiple kinds of criminal conduct demonstrating an intentional and deliberate disregard

for the law means a substantial sentence is appropriate upon conviction." Id. at 54. The Court sentenced Petitioner to 57 months' concurrent sentences. No. 13-cr-547, ECF No. 13 (judgment of conviction). He also sentenced Petitioner to terms of supervised release of five years for the New York offense and three years for the New Jersey offenses, to be served concurrently. Id.

B. Appeal

On August 10, 2014, Mr. Ongay filed a notice of appeal at Petitioner's request. No. 13-cr-547, ECF No. 10 (notice of appeal). See also No. 14-3582 (3d Cir. Aug. 18, 2014) (same). The Government filed a motion to enforce Petitioner's appellate waiver contained in his guilty plea agreement. No. 14-3582, Motion to Enforce filed Nov. 24, 2014. The Court of Appeals for the Third Circuit issued an order directed to Mr. Ongay, as counsel for Petitioner, to file a response to the motion within fourteen (14) days and that if Mr. Ongay believed that no non-frivolous issues for appeal existed, to file a motion to withdraw. Order filed Dec. 10, 2014. The order further provided that Petitioner would have an opportunity to file a response to the motion to enforce if counsel moved to withdraw. Id. Mr. Ongay did file a motion to withdraw. Petitioner's current counsel then filed an entry of appearance and an unopposed motion for a sixty-day extension of time to file a

response to the motion to enforce the appellate waiver, which
was granted.  Entry of Appearance and Unopposed Motion for
Extension of Time filed Jan. 9, 2015; Order entered Jan. 14,
2015.  The Third Circuit eventually granted the motion to
withdraw and granted Petitioner's current counsel an additional
sixty (60) days in which to file a response to the motion to
enforce.  The Order was entered March 23, 2015.  Counsel for
Petitioner filed a response on May 21, 2015, arguing only that
Petitioner's former counsel was ineffective.  Response filed May
21, 2015.  The Third Circuit granted the motion to enforce the
appellate waiver and summarily dismissed Petitioner's appeal on
June 24, 2015.  No. 14-3582, Order filed June 24, 2015.

    C.   <u>§ 2255 Motion</u>

On June 29, 2016, Petitioner timely filed a Motion to
Vacate, Set Aside, or Correct Sentence.  No. 16-cv-3878, ECF No.
1.  Petitioner's current counsel contacted both Mr. Ongay and
the Government to view discovery materials.  ECF No. 7, Ans. at
11-12.  Mr. Ongay could not locate his file of downloaded
materials at the time of Petitioner's counsel's request.  <u>See</u>
ECF No. 7-4, Declaration of Jose Luis Ongay, ¶ 14.  The
Government invited Petitioner's counsel to review its files,
which included numerous folders of discovery materials and also
referred the attorneys to an attorney for one of Petitioner's
co-defendants, who served as the repository of discovery

materials in this case.  Ans. at 12.  Petitioner's attorneys reviewed the files and tagged many reports and other discovery materials, which the United States then copied and mailed to counsel.  Id.  See also ECF No. 7-1 (letter forwarding discovery materials).

In the Petition, Petitioner raises as grounds for relief the allegedly ineffective assistance his criminal defense attorney, Mr. Ongay, rendered to him.  Specifically, Petitioner argues that his counsel failed to assist him effectively because of the following actions or inactions:

- "During his representation of petitioner, Mr. Ongay did not obtain, print out, or review discovery personally as defense counsel, or with Petitioner.  In fact, Mr. Ongay did not obtain the discovery of the discovery available to the defense for Petitioner to review at all."

- "Mr. Ongay did not conduct an adequate or required investigation as to each case against petitioner, including defenses and challenges to the charges against Petitioner through pretrial motions."

- "Mr. Ongay did not ensure fair and impartial sentencing for Petitioner in light of the sentences imposed upon his codefendants."

- "Mr. Ongay did not argue against the discretionary imposition of a period of supervised release."

- "Mr. Ongay's actions after Petitioner's guilty plea and sentencing constituted substandard performance and prevented Petitioner's current counsel from prosecuting Petitioner's appeal and defending against the Government's motion to enforce the appellate waiver."

See ECF No. 1, Pet. at 14-15, ¶ 44.

Although the Petition identifies the aforementioned alleged performance deficiencies, it does not identify or specify how Petitioner was prejudiced by the alleged ineffective assistance. See generally id. & ¶¶ 45-46 ("The defense respectfully submits that a review of the actions of Mr. Ongay reveals grave concerns regarding counsel's substandard performance. It is respectfully submitted that these factual concerns, combined with the presence of numerous significant legal issues, require the Court to grant Petitioner's requested habeas corpus relief, or at a minimum, to conduct a F.R.E. 104 Evidentiary Hearing to further develop the record through witness testimony.").

An affidavit of Petitioner, however, attached as an exhibit to the Petition provides that Petitioner "would not have pled guilty in the cases against me and would have fought the charges against me at trial" but for counsel's alleged ineffective assistance. ECF No. 1-2, Aff. at 8, ¶ 27. Petitioner also argues this point in his reply brief. ECF No. 8, Reply Br. at 3 ("Petitioner has also established that but for prior counsel's

errors, Petitioner would not have pled guilty and would have insisted on going to trial."). No other arguments are made regarding prejudice other than that Petitioner was "clearly prejudiced" by Mr. Ongay's actions. <u>See</u>, <u>e.g.</u>, ECF No. 8 at 6 ("Petitioner was clearly prejudiced by Mr. Ongay's failure to seek a reduced term . . ."); at 7 ("Petitioner was clearly prejudiced by Mr. Ongay's failure to argue . . .").

II. STANDARD OF REVIEW

A prisoner in federal custody under a federal sentence "may move the court which imposed the sentence to vacate, set aside or correct the sentence" upon the grounds that (1) "the sentence was imposed in violation of the Constitution or laws of the United States," (2) "the court was without jurisdiction to impose such sentence," or (3) "the sentence was in excess of the maximum authorized by law." 28 U.S.C. § 2255(a).

The Court, in considering a § 2255 motion, must accept the truth of a movant's factual allegations unless they are frivolous on the basis of the existing record. <u>See</u> <u>United States v. Booth</u>, 432 F.3d 542, 545 (3d Cir. 2005). A court may deny the motion without holding an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b).

III. DISCUSSION

The Sixth Amendment guarantees criminal defendants the right to effective assistance of counsel.  See Strickland v. Washington, 466 U.S. 668, 685–86 (1984).  A defendant who alleges ineffective assistance must satisfy the two-part test outlined in Strickland:

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687.

To show deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness . . . under prevailing professional norms." Id. at 686–88.  A petitioner must identify the particular acts or omissions that are challenged as unprofessional.  See id. at 690.  Under this first prong of the Strickland test, scrutiny of counsel's conduct must be "highly deferential."  See id. at 689.  Indeed, "[c]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.  The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate

the conduct from counsel's perspective at the time." Id. at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, then counsel's strategic choices are "virtually unchallengeable." Gov't of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1432 (3d Cir. 2006) (citing Strickland, 466 U.S. at 690-91).

The second prong of the Strickland test requires the petitioner to prove prejudice. See Stickland, 466 U.S at 693. To demonstrate prejudice, the defendant must show that counsel's deficient performance "actually had an adverse effect on the defense." Id. at 693. "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

In the context of a guilty plea, the prejudice prong requires that defendant "show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). Only attorney errors that affect the outcome of a criminal proceeding will be grounds for habeas relief. Strickland, 466 U.S. at 691. The requirement of

prejudice reflects the substantial interest in the finality of guilty pleas that would be too easily undermined by defendants seeking a more favorable outcome to challenge a plea after the fact.  Hill, 474 U.S. at 58.

"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . .  If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed.'"  Strickland, 466 U.S. at 697.  Because Petitioner has failed to demonstrate how the allegedly ineffective assistance of his counsel has sufficiently prejudiced him, the Court will dispose of the Petition on the prejudice prong and decline to address the deficient performance prong.

As outlined supra, Petitioner argues that his former counsel was ineffective for failing to investigate his criminal proceedings, including printing out the discovery provided on an electronic database, and potential affirmative defenses, failing to argue at sentencing that Petitioner should receive a sentence commensurate with those given to his co-defendants, failing to argue for a shorter term of supervised release, and failing to effectively represent him post-sentencing.  The Court will address each in turn.

"[W]here the alleged error of counsel is a failure to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea." Hill, 474 U.S. at 59. Such an assessment depends on whether the evidence would have changed the outcome of a trial. Id. Here, although Petitioner alleges that Petitioner's counsel failed to investigate his case and print out the discovery for Petitioner to review, Petitioner does not specify a single piece of exculpatory or otherwise influential evidence in the underlying criminal proceedings that would have affected his decision to plead guilty or go to trial.[4] Indeed, Petitioner admits that his current counsel has reviewed the discovery and other evidence available from his criminal matters, yet Petitioner has included as an exhibit none of the discovery materials to support the prejudice prong. Nor do the affidavits of Petitioner and his current counsel reflect that they have discovered any such exculpatory or influential evidence that would have caused Petitioner not to plead guilty. Petitioner has thus failed to

---

[4] It is important to note that Petitioner admitted his guilt at his first meeting with former counsel and requested to plead guilty. ECF No. 7-4, Decl. of Jose Luis Ongay at 6.

demonstrate prejudice as to any alleged ineffectiveness related to a sufficient investigation into the criminal proceedings including discovery.

"[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." Id. Although Petitioner argues that his former counsel failed to argue an entrapment defense, such an allegation is belied by the record which indicates that his former counsel did evaluate and argue sentencing entrapment and sentencing manipulation at his sentencing hearing including in Petitioner's sentencing memorandum to the Court.

But dispositive here, Petitioner simply fails to make any argument as to which other affirmative defenses his former counsel should have investigated and argued, and how those affirmative defenses would have been successful at trial. Indeed, although former counsel argued it as a mitigating factor that should be taken into account at sentencing and which the Court did take into account in determining an appropriate sentence for Petitioner, the record reflects that an entrapment defense to the Indictment itself (as opposed to sentencing entrapment) would not have prevailed at trial because Petitioner had a propensity to commit the offenses charged for the reasons

the Court detailed at sentencing and which the Court had

originally confronted in the defendants' motion to dismiss the

indictment based on outrageous government conduct. <u>See</u> No. 16-

cv-3878, ECF No. 1-3 (sentencing transcript); No. 12-cr-636, ECF

No. 75 (opinion denying motions to dismiss).[5] <u>See</u> <u>also</u> Ans. at

17-18; Decl. Jose Luis Ongay, ¶ 9.

As to Petitioner's argument regarding his former counsel's

failure to argue for a shorter term of supervised release from

what was outlined in his plea agreement, Petitioner would need

to prove that, but for counsel's conduct, there is a reasonable

probability that that Petitioner's term of supervised release

would have been different. <u>See</u> <u>Park v. United States</u>, No. 08-

cv-1092, 2008 WL 2632564, at *3 (D.N.J. July 3, 2008) (citing

<u>Strickland</u> prejudice standard in the context of ineffective

assistance of counsel regarding term of supervised release).

Here, Petitioner presents no evidence, such as additional

mitigating evidence, or argument to support such a conclusion.

The plea agreement specifically provided that the Court could

impose a term of up to five years of supervised release for the

---

[5] As for Mr. Ongay's alleged failure to raise entrapment as a
defense to the indictment, he was in good company. None of the
other defendants raised it in their pretrial motions (motions
Mr. Ongay did join in on behalf of the Petitioner) asserting
instead a related defense of outrageous government conduct.
Like Mr. Ongay, counsel for the other defendants were not
ineffective. The entrapment defense was simply not available on
the facts of this case.

New York offense and up to three years for the New Jersey offenses.  Even if Petitioner had presented additional mitigation evidence or argument it is highly unlikely the Court would have imposed a lesser term of supervised release. Petitioner committed a range of serious criminal offenses in two different districts and continued criminal conduct even after his conduct was exposed.  The terms of supervised release were necessary to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Petitioner, to further is post-release rehabilitation and, as noted took into account the seriousness of his multiple offenses.  Indeed, this Court would impose the very same term of supervised release today as it did in its original judgment.

Notably, counsel did present argument regarding Petitioner's compliant behavior while on bail and under the Court's supervision, and argued at sentencing that "the period of incarceration will have a very direct impact on the quality of life on other members of the family."  Petitioner's own witness at the sentencing hearing, his wife, also specifically asked the Court to consider "probation."  The Court took into account these arguments and decided to impose a lesser term of imprisonment with the given term of release, thus taking into account the individual circumstances of Petitioner and his family.  Further, given that Petitioner's own wife advocated in

favor of something akin to supervised release, probation, it appears that a term of supervised release is more beneficial to Petitioner than a longer prison sentence would be. Petitioner has thus failed to establish prejudice as to his argument regarding supervised release.

As to Petitioner's argument that his former counsel failed to ensure sentencing parity between Petitioner and his co-defendants, Petitioner fails to explain how Petitioner should have done this and how it would have affected his ultimate sentence. Sentencing is a discretionary function of the Court, and the Court identified on the record the reasons for the disparity of sentences between Petitioner and his co-defendants. Although Petitioner argues that he would have gone to trial had he known of the disparity of sentences to be imposed on him versus his co-defendants, it is unclear how he believes his counsel could have ensured more parity in light of the Court's discretion. Furthermore, the Petitioner was the last defendant of the conspiracy to be sentenced. See No. 12-cr-636, ECF No. 145 (minute entry of sentencing). Petitioner thus presumably knew of the sentences received by his co-defendants and also knew what his sentencing range would be given his plea agreement and pre-sentence investigation report.[6] Yet, Petitioner decided

---

[6] Petitioner makes no allegation that he did not know the sentences received by his co-defendants.

to proceed to sentencing and at no point attempted to withdraw his guilty plea to proceed to trial.[7] Petitioner thus cannot demonstrate prejudice as to his counsel's alleged failure to ensure parity of sentencing between Petitioner and his co-defendants.

As to Petitioner's arguments regarding his counsel's actions after sentencing, i.e. withdrawing as counsel after filing a notice of appeal and only transferring certain file materials to Petitioner's current counsel, Petitioner fails to argue how these actions prejudiced him in light of his appellate waiver. Petitioner does not identify any arguments that he would have made in opposition to the motion to enforce his appellate waiver nor does he identify any documents he specifically needed for the appeal that he could not obtain.[8] As such, Petitioner has failed to demonstrate that any prejudice resulted from his prior counsel's actions after sentencing.

Finally, the Court will generally note a lack of prejudice to Petitioner because the Petitioner would have likely faced a significantly higher sentence if he proceeded to trial. At the outset, Petitioner faced a total maximum sentence of fifty

---

[7] Petitioner makes no allegation that he advised his counsel that he wanted to withdraw his guilty plea and proceed to trial.

[8] Notably, Petitioner was represented by his current counsel for all substantive portions of his appeal, i.e. responding to the motion to enforce the appellate waiver.

years' imprisonment for the offenses charged against him in the information. The Government had amassed considerable digital video and audio of Petitioner engaging in sale after sale of contraband cigarettes and then laundering the proceeds. See ECF No. 7, Ans. at 19. If Petitioner went to trial and was found guilty for only the offenses to which he pled guilty, his total offense level under the Sentencing Guidelines would have been a 28 and he would have faced a Guidelines range of 78 to 97 months' imprisonment because he would not be eligible for the three-point adjustment for acceptance of responsibility. See U.S.S.G. § 3E1.1. See also ECF No. 7, Ans. at 19. Given that Petitioner faced a substantially higher sentence if he proceeded to trial on only some of the offenses charged, from a general perspective, Petitioner has failed to demonstrate prejudice.

IV. EVIDENTIARY HEARING

Petitioner argues that as an alternative to granting the Petition, the Court must hold an evidentiary hearing. An evidentiary hearing is not warranted here because Petitioner has failed to meet his burden of demonstrating any prejudice as a result of his former counsel's allegedly ineffective assistance. As Petitioner correctly cites in his Reply Brief, an evidentiary hearing is not warranted when the files and records of the matter conclusively show that the petitioner is entitled to no relief. See 28 U.S.C. 2255(b). Because Petitioner has failed

to show that he is entitled to relief in light of a lack of prejudice, the Court will decline to order an evidentiary hearing.

This not a case of ineffective assistance of counsel. At all times Petitioner's counsel advocated on his behalf vigorously and consistent with the evidence and law. Rather, this is a case of buyer's remorse. To the extent his sentence differed from that of his co-defendants, it differed because of his own conduct, his risk of recidivism, and the Court's consideration of the presentence report and the factors found in 18 U.S.C. § 3553. In short, his sentence was a function of this Court's sentencing discretion - nothing more, nothing less.

V.   CERTIFICATE OF APPEALABILITY

The Court will deny a certificate of appealability because Movant has not demonstrated "a substantial showing of the denial of a constitutional right" as required by 28 U.S.C. § 2253(c)(2).   See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003).

VI.   CONCLUSION

For the foregoing reasons, the Court will deny the Motion and decline to issue a certificate of appealability. An appropriate order follows.

Dated: May 18, 2018                    s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.